## BROWN–ROBERTS HARDWARE & SUPPLY CO., Limited, v. ANDREWS.
### No. 4551.

Court of Appeal of Louisiana.
Second Circuit.
June 5, 1933.

T. F. Hunter, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

DREW, Judge.

Plaintiff sued for the sum of $459.87, the amount alleged to be due for certain merchandise sold to defendant.

The answer is a general denial of any indebtedness to plaintiff or that defendant had purchased any goods from plaintiff on a credit.

The lower court gave judgment for plaintiff in the sum of $376.26, with legal interest from judicial demand until paid. Defendant has appealed, and plaintiff has answered the appeal, praying that the amount of the judgment be increased to $396.61.

At the time the goods in question were purchased, there was in operation on Red river, adjacent to the city of Alexandria, a place of entertainment called the "Show Boat" which was a steamboat called the "Cotton Blossom." The entertainment offered there was dancing, dining, gambling, and other attractions usually found in night clubs. The gambling or casino was operated by defendant, and the front attractions above enumerated were operated by a man named "French." The merchandise bought, the price of which is sued for here, consisted of restaurant supplies, cooking utensils, etc., to be used in the front or restaurant and dining hall.

On December 24, 1931, the man French visited plaintiff's place of business and selected the merchandise, with the understanding that he was to pay cash for it. After making his selection, and the invoice was made up, he stated he could not pay cash and requested that it be charged to the "Southern Enterprises," under which name he claimed to be operating. The invoice was made out by the clerk in the name of "Southern Enterprises," and the question of credit was then taken up with Mr. Blanchard, the credit manager and office manager of plaintiff, who refused to extend credit to Southern Enterprises or French, and instructed the clerk to take the matter up with defendant herein, who was well known to plaintiff's manager and known to be interested in the Show Boat. The invoice was changed at that time from Southern Enterprises to "Neal Andrews," as purchaser, and submitted to Mr. Andrews by plaintiff's clerk who testified as follows: "A. I took these sheets up to Mr. Andrews and informed him that we would charge this merchandise to him and told him we could not charge it to these other people and that if he would give me an O. K. on this sheet, this bill of goods, that we would go ahead and deliver it and Mr. Andrews made the statement that he could get anything charged most any place in town and I told him I was sure he could because I had sold him in times gone by and he O. K.'d it here, see? Neal Andrews."

It is not denied that at that time defendant wrote on the head of the invoice the following: "O. K. Neal Andrews." The merchandise was charged on plaintiff's books to Neal Andrews. A few days later Mr. Andrews appeared in person at the office of

plaintiff and made a payment of $150 on the account and asked to be released from further payments, which request was refused by plaintiff, but, in order to assist Mr. Andrews, it was agreed that he should place a man at the cash register in the front of the Show Boat and out of the money taken in there pay $50 a week to plaintiff. However, he was in no way released. The man was placed at the cash register, but no money was paid to plaintiff, and about January 10, 1932, the man, French, left for parts unknown. Repeated demands were made on Mr. Andrews, and during February he refused to pay the bill and this suit followed.

■Defendant contends that he never intended to become responsible for the bill of goods and only O. K.'d the invoice to show that same had been received or delivered to the Show Boat. However, this testimony loses its force when we find that defendant was not on the Show Boat when the goods were delivered, and when he signed the invoice, he was at another place of business operated by him, and which place was at least one block away from the Show Boat. He personally visited plaintiff's office and paid $150, although he claims it was money taken in by French. At that time he asked to be released from the balance of the debt. He afterwards placed a man in charge of the money taken in by French, for the purpose of paying plaintiff, all of which tends strongly to show that he did realize he was obligated for the debt.

Common knowledge of a business such as the Show Boat teaches us that, without a show, dining room, and dancing hall to draw the crowds, the gambling end would have been a failure, and that defendant, although only operating the gambling part of the Show Boat, was necessarily interested in the drawing attractions being carried on.

The lower court found that, before the merchandise was delivered on the Show Boat, defendant agreed to have same charged to him, and that he O. K.'d the bill and signed his name thereto. When he did so, he became the purchaser and bound himself to pay the amount of the bill. We see no manifest error in the lower court's finding in this respect.

■ Defendant objected to any evidence to show that any one else purchased the goods and wares, other than defendant, as alleged in the petition. The evidence was allowed subject to the objection and considered by the court. We think it was properly considered and was admissible, and it is clearly shown that, if defendant had refused to bind himself as purchaser of the merchandise, delivery would have not been made, as credit had been refused to French and the Southern Enterprises.

■ Plaintiff's testimony showed that defendant agreed that some other merchandise of like nature might be charged to him and, at a later date, several items, totaling about $20, were delivered to the Show Boat. These items were rejected by the lower court, and we think properly rejected. It is not shown that the exact items nor the amount of each were ever called to the attention of defendant. He was not called upon to give his O. K. to the invoices covering these items. If a bill or invoice had been presented to him for delivery, he could have refused acceptance of same. He should have been given this opportunity.

We find no error in the judgment of the lower court, and it is therefore affirmed, with costs.